UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| DIANE MURACH and<br>MELISSA AUBUCHON,<br>    Plaintiffs<br><br>v.<br><br>J'S FOUR, INC. and<br>JANET ARSENAULT,<br>    Defendants | C.A. No. 05-11265 MLW |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

### I. INTRODUCTION

Defendants J's Four, Inc. and Janet Arsenault have moved to dismiss the Complaint in this action on three separate grounds: First, the plaintiffs' Complaint fails to allege the basic elements necessary to make out a prima facie case of retaliation under the Fair Labor Standards Act, 29 U.S.C. §215, requiring dismissal of Count I; second, plaintiff's state common law claims under Count II fail to state a claim under Massachusetts law, and are also are superseded by the more specific statutory remedies provided by the FLSA; and third, the Complaint fails to allege any acts against Janet Arsenault individually outside of her capacity as an employee director or shareholder of J's Four, Inc., and as such, all claims against her individually should be dismissed.

## II. ARGUMENT

### A. Standards for a Motion to Dismiss Under Rule 12 (b)(6)

A motion to dismiss should be granted where it clearly appears, according to the facts alleged, that the plaintiff cannot recover on any viable theory. Berezin v. Regency Sav. Bank, 234 F.3d 68, 70 (1st Cir. 2000); Langadinos v. American Airlines, Inc., 199 F.3d 68, 69 (1st Cir. 2000); Correa-Martinez v. Arrillaga-Belendez, 903 F.2d 49, 52 (1st Cir. 1990). It is axiomatic that in ruling on a Rule 12(b)(6) motion to dismiss, a court must take the well-pleaded facts as they appear in the complaint, indulging every reasonable inference in plaintiff's favor. Dartmouth Review v. Dartmouth College, 889 F.2d 13, 16 (1st Cir.1989); Gooley v. Mobil Oil Corp., 851 F.2d 513, 514 (1st Cir.1988).[1]

The court, however, should not credit the non-moving party's "bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation." Correa-Martinez, supra, 903 F.2d at 52, citing, Chongris v. Board of Appeals, 811 F.2d 36, 37 (1st Cir.), cert. denied, 483 U.S. 1021, 107 S.Ct. 3266, 97 L.Ed.2d 765 (1987). The court is "neither bound by the plaintiff's legal characterization of the facts, nor required to ignore facts set forth in the complaint that undermine the plaintiff's claims." Scott v. O'Grady, 975 F.2d 366, 368 (7th Cir. 1992). Finally, Rule 12 (b)(6) does not entitle a plaintiff to rest on "subjective characterizations" or conclusory descriptions of "a general scenario that could be dominated by unpleaded facts." Dewey v. Univ. of New Hampshire, 694 F.2d 1, 3 (1st Cir.1982), cert. denied, 461 U.S. 944, 103 S.Ct. 2121, 77 L.Ed.2d 1301 (1983).

---

[1] Defendants expressly deny the allegations in the Complaint, including that they violated any laws or retaliated against plaintiffs for refusing to do so. Plaintiffs were terminated for entirely legitimate performance reasons *more than two months after* the incidents they allege in the Complaint. However, for purposes of this motion, defendants will treat plaintiffs' allegations as true, as required by Fed. R. Civ. P. 12(b)(6).

2

B.  **The Plaintiffs Have Not Alleged A
Prima Facie Case Under the Fair Labor Standards Act**

Even taking all facts alleged in the Complaint as true and in their most favorable light, plaintiffs do not even approach the necessary elements to make out a prima facie case under the Fair Labor Standards Act, 29 U.S.C. §215 ("FLSA").[2] Simply put, plaintiffs do not allege that they engaged in any "protected activity" that falls within the purview of the FLSA. The leading First Circuit case of Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99 (1st Cir. 1999) is directly on point, and mandates dismissal of Count I of this case.

In Claudio-Gotay, the employee was required to monitor security guards at the employer's plant, including approval of the guards' invoices for payment. The guards were hired through a third party contractor, and the plaintiff employee concluded that the third party contractor did not properly compensate the guards for overtime hours. He spoke with his superiors about a labor violation, and wrote a letter to the defendant employer explaining his position. A meeting was held, and the employer decided that the third party contractor would be notified of the violations, but that in the interim, the plaintiff employee should continue to approve the invoices. He refused and was terminated. The trial court dismissed the plaintiff's FLSA retaliation claim on a motion for summary judgment, and the First Circuit affirmed.

As an initial matter, the Court stated that "[t]he elements of a retaliation claim under the FLSA require, at a minimum, a showing that (1) the plaintiff engaged in a statutorily protected activity, and (2) his employer thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in protected activity. The central issue on appeal is whether [the

---

[2] While the Complaint does not specify the particular sub-section upon which plaintiffs' claims rest, presumably Count I of the Complaint is premised on 29 U.S.C. §215(a)(3), which provides, in pertinent part, that it is wrongful for an employer to "discharge...any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter...."

3

employee] engaged in a statutorily protected activity that triggers the protection of 29 U.S.C. §215(a)(3)." Id., 375 F.3d at 102, citing, Blackie v. Maine, 75 F.3d 716, 722 (1st Cir. 1996).

The Court then went on to state that although the plaintiff did not file any formal complaints against his employer with a governmental agency, there were two incidents that the plaintiff contended fell "within the ambit of filing a complaint": (1) when the plaintiff informed the defendant, both orally and in writing, that the guards were not being paid overtime; and (2) when the plaintiff refused to sign the invoices. Id., 375 F.3d at 102. As to the first incident, the Court stated that although this Circuit does not necessarily require a "formal complaint" to be filed by the employee to avail himself of FLSA remedies, in order to constitute "protected activity" under the FLSA, "'the employee must step outside his or her role of representing the company and...file...an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA.'" Id. The Court concluded that when the plaintiff first informed the defendant of the potential overtime violations, he did so in furtherance of his job responsibilities, and thus he "'never crossed the line from being an employee merely performing his job...to an employee lodging a personal complaint.'" Id., 375 F.3d at 102-103.

In this case, we have exactly the same situation. Plaintiffs' job responsibilities for J's Four, Inc. included being the office managers for Jarsen Management of New England and Jarsen Management of Albany, respectively, and ensuring compliance with child labor laws, including the FLSA. Complaint, ¶'s 16, 25.[3] The only allegation in the Complaint that even

---

[3] J's Four Inc. is the entity that holds the KFC restaurant franchise licenses for fifteen stores across New England and New York. Jarsen Management is the operating company that runs the individual KFC store locations.

4

remotely references any "action" taken by plaintiff Murach was one stray comment informing her employer that changing payroll records is a violation of law. See, Complaint ¶ 30. The Complaint does not even allege that plaintiff Aubuchon said or did anything at all. Therefore, even taking these allegations as true, the only action the Complaint alleges Murach took was, like the plaintiff in Claudio-Gotay conduct "in furtherance of her job responsibilities," and as such, it does not meet the minimal threshold of 29 U.S.C. §215 or the standards to make out a prima facie case under the FLSA in this Circuit.

As to the second incident in Claudio-Gotay, refusal to sign the invoices, the Court held that this also did not trigger protection under the FLSA, stating that "[t]his circuit, although not requiring an employee to file a formal complaint with a court or agency to receive FLSA protection, *does require an employee to take action beyond mere "'abstract grumblings.'"* Id., 375 F.3d at 103 (emphasis added, citation omitted). Even applying the looser standards of not requiring a formal agency complaint, both the District Court and the First Circuit analyzed whether the plaintiff's refusal to sign the invoices was sufficient to constitute the type of "action" necessary to constitute the "filing of a complaint" for purposes of the FLSA. They held that it was not. The Court stated that that the statutory remedies provided by the FLSA are limited to protecting an employee who "'lodges complaints or supplies information to officials regarding allegedly substandard employment practices and conditions.'" Id. (citations omitted). The Court concluded that "[the plaintiff's] refusal to sign the invoices did neither" and therefore, did not meet the minimum threshold for the "filing of a complaint" within the meaning of the FLSA. Id.

Again, that is exactly the case here. Plaintiffs have not alleged a single fact that meets these minimum elements. The First Circuit has held that the hallmark of "protected activity" under the FLSA is for the employee to "step outside" his or her role of representing the company

5

and take some action to "assert" FLSA rights. Id., 375 F.3d at 103. Other circuit courts are in accord. Id., citing, McKenzie v. Renberg's, Inc., 94 F. 3d 1478, 1486 (10th Cir. 1996); EEOC v. HBE Corp., 135 F. 3d 543, 554 (8th Cir. 1998). Here, there simply was no such "action" by either of the plaintiffs.

As the First Circuit noted in Valerio v. Putnam Associates, Inc., 173 F.3d 35, 44-45 (1st Cir. 1999), basing an FLSA claim on "purely intracorporate complaints 'unhelpfully leaves employers in the dark' as to what types of assertions will rise to the level of protected activity by their employees." Id., 173 F.3d at 44, citing, Clean Harbors Environ Serv., Inc. v. Herman, 146 F. 3d 12 (1st Cir. 1998). The Court went on to note "'there is a point at which an employee's concerns and comments are too generalized and informal to constitute 'complaints' that are 'filed' with an employer within the meaning of the [statute].'...Even putting oral complaints aside, as we do in this case...written comments and criticisms made to an employer may not always amount to filed complaints 'under or related to the statute.'" Id., 173 F.3d at 44-45, citing, Clean Harbors, supra, 146 F. 3d at 22.

In Valerio, the plaintiff asserted her FLSA rights by writing a letter to her employer citing the statute, specifically asserting her rights to overtime pay, stating that she was considering filing an agency action and threatening legal action of her own. In stark contrast, this case does not present a single allegation that comes anywhere near this type of assertion of rights or affirmative activity by either of the plaintiffs. All the plaintiffs have alleged here are simply after-the-fact conclusory assumptions that a labor recordkeeping issue discussed (by only one of the plaintiffs) *two months prior* was the cause for their termination, *and* that the employer's motives were retaliatory. This type of subjective characterization, without any supporting facts, cannot as a matter of law support a viable FLSA claim under any circumstances.

On all fours factually and legally with this case, and indeed expressly citing <u>Claudio-Gotay</u>, is <u>Robinson v. Wal-Mart Stores</u>, 341 F. Supp. 2d 759 (W.D. Mich. 2004). In that case, an employee, a personnel manager, alleged that she was wrongfully terminated in retaliation for complaining about certain improprieties in the reporting of employees' work hours. While the court found that the employee appeared to have been appropriately cautioning her superiors about improprieties with an eye towards correcting them and minimizing the risk of liability, the court held that the "plaintiff's expressions of concern or discomfort or frustration over her employer's wage and work hour reporting practices...do not amount to the *requisite adversarial assertion of statutory rights*" necessary to make out a claim under the FLSA. <u>Id.</u>, 311 F. Supp. at 762-763 (emphasis added). <u>See also</u>, <u>McKenzie v. Renberg's, Inc.</u>, 94 F. 3d 1478 (10th Cir. 1996). The Court in <u>Robinson</u> held that the plaintiff's expressed apprehensions about the labor violations were "for her employer's benefit as well as her own." <u>Id.</u>, 341 F. Supp. at 763.

This case presents precisely the same scenario. There are absolutely no allegations in the Complaint suggestive that the plaintiffs took, or even attempted to take, any action adverse to their employer, that they ever acted other than in furtherance of their job responsibilities or that they ever "crossed the line" from being employees merely performing their jobs to employees lodging personal complaints. Nowhere in the Complaint do the plaintiffs even allege that they ever did anything more than make one generalized comment that changing payroll records was against the law, and even so, this alleged statement was only made by plaintiff Murach. As such, even assuming the truth of the complaint in its most favorable light, the plaintiffs here did even *less* than the plaintiffs in <u>Claudio-Gotay</u> or <u>Robinson</u>, and do not even approach satisfying the threshold showing necessary to maintain an FLSA claim in this Circuit.

Finally, the plaintiffs' conclusory and purely speculative inference that their termination more than two months after the incident alleged in the Complaint was retaliatory should not be credited as the type of *factual* allegations necessary to make out a prima facie case of retaliation or survive a motion to dismiss. See, Dewey v. Univ. of New Hampshire, supra, 694 F.2d at, 3 (Rule 12(b)(6) does not entitle a plaintiff to rest on "subjective characterizations" or conclusory descriptions of "a general scenario that could be dominated by unpleaded facts."); Correa-Martinez, supra, 903 F.2d at 52 (plaintiff may not defeat Rule 12(b)(6) motion with "unsubstantiated conclusions or outright vituperation."). Such vague conjecture, which is so remote in time, with no conduct by plaintiffs indicating that they took any independent action to complain about or remedy the allegedly wrongful conduct of the defendants, simply does not rise to the level of "protected activity" required under the FLSA. As such, the Complaint fails to allege the basic elements necessary to make out a prima facie case of retaliation under the FSLA, and accordingly, Count I of the Complaint should be dismissed.

### C. The Plaintiffs' State Law Claim Under Count II of The Complaint Must Be Dismissed

The plaintiff's second count, a state law claim premised on breach of the implied covenant of good faith and fair dealing, must be dismissed. As a threshold matter, plaintiffs allege federal question jurisdiction in this Court under 28 U.S.C. §1331 as the Count I is brought under a federal statute. Count II is a common law state law claim. Accordingly, if this Court dismisses the FLSA Count, as it should, it should not retain supplemental jurisdiction of the sole remaining Count. 28 U.S.C. §1367. See, Houlton Citizens Coalition v. Town of Houlton, 175 F.3d 178 (1st Cir. 1999)(affirming District Court dismissal of state law claim where federal claims had been disposed of prior to trial).

Even standing alone, Count II does not state a claim and should be dismissed for two reasons. First, under Massachusetts law, "an at will employee generally can be fired for any reason or no reason at all." Acher v. Fujitsu Network Communications, 354 F. Supp. 2d 26, 29 (D. Mass. 2005), citing, Smith v. Mitre Corp., 949 F. Supp. 943, 948 (D. Mass. 1997). A "narrow exception" to that rule is where the discharge is for "reasons that violate clearly-established public policy." Acher, 354 F. Supp. 2d at 29. The Supreme Judicial Court, "consistently has interpreted the public policy exception narrowly, reasoning that to do otherwise would convert the general rule...into a rule that requires just cause to terminate an at-will employee." Id., 354 F. Supp. 2d at 29, citing, King v. Driscoll, 418 Mass. 576, 582 (1994). The foregoing standard applies to a claim for breach of the implied covenant of good faith and fair dealing in at-will employment situations. Id. See also, Cousin v. Sofono, 9 Wage & Hour Cas. 2d (BNA) 298, 2003 U.S. Dist. LEXIS 18670 (D. Mass. 2003).

In applying this standard, the SJC has held that the public policy exception does not extend to "all employee acts that are 'appropriate or socially desirable,'" nor do they "extend so far as to cover all acts by an employee that are directed to illegal, unsafe or unethical conduct." Archer, supra, 354 F. Supp. at 29 (citations omitted). In this case, the plaintiffs simply allege that their supposed refusal to falsify wage records, combined with a stray comment made by one of the plaintiffs, meets the standards to support a claim for a breach of the implied covenant. It does not. Id. Allowing plaintiffs to maintain a "public policy" claim on the facts alleged here would be an improperly expansive application of Massachusetts law in this area.

Second, even if the allegations of the Complaint may be viewed as falling within the narrow confines of the public policy exception, where the so-called public policy alleged in a state law claim is specifically encompassed in a federal statute, the state law claim cannot stand,

and must be dismissed. Valerio, supra, 173 F.3d at 45-46. In Valerio, a state law wrongful termination claim arising out of an overtime pay dispute was dismissed because the public policy involved in the plaintiff's wrongful discharge claim was encompassed by the FLSA. In so holding, the Valerio court relied on Melley v. Gillette Corp., 397 Mass. 1004 (1986), in which the SJC held that the plaintiff could not maintain a common law wrongful discharge claim premised on age discrimination where there was a Massachusetts statute specifically addressing age discrimination claims. The SJC adopted the reasoning of the Appeals Court in the same case, wherein the Appeals Court stated: "[w]e think that where, as here, there is a comprehensive remedial statute, the creation of a new common law action based on the public policy expressed in that statute would interfere with that remedial scheme." Melley v. Gillette Corp., 19 Mass. App. Ct. 511, 513 (1985). In this case, the plaintiffs' common law implied covenant/wrongful discharge claim in Count II is premised entirely on a retaliatory firing, a policy which is expressly covered by the FLSA and encompassed within Count I of the Complaint. Accordingly, the plaintiffs' common law state claim cannot stand, and Count II should be dismissed.

D. **The Claims Against Defendant Janet Arsenault Individually Must Be Dismissed**

While the Complaint should be dismissed in its entirety for the reasons set forth above, the claims against defendant Janet Arsenault individually should also be dismissed as there is absolutely no basis for personal liability here. The Complaint in this matter fails to allege a single fact or cognizable cause of action against defendant Janet Arsenault individually. While there is no dispute that Mrs. Arsenault is a director, employee and one of the shareholders of J's Four, Inc., this alone does not create personal liability for her in connection with the plaintiffs' claims against the corporation.

It is settled that "'[a] corporation is an independent legal entity, separate and distinct from its shareholders, officers and employees.'" In re Industrial Commercial Electrical, Inc., 319 B.R. 35, 49 (D. Mass. 2004), citing, Spaneas v. Travelers Indemnity Co., 423 Mass. 352, 354 (1996). As noted in Spaneas, "only in rare instances, in order to prevent gross inequity, will a Massachusetts court look beyond the corporate form. 423 Mass. at 354, citing, My Bread Baking Co. v. Cumberland Farms, Inc., Id., 353 Mass. 614, 620 (1968). Indeed, "[s]ince My Bread...under Massachusetts law, the corporate veil will only be pierced in rare situations." Birbara v. Massad, 99 F.3d 1233, 1238 (1st Cir. 1996).

All actions alleged against Janet Arsenault in the Complaint are in her capacity as an employee, director or shareholder of the corporation. There is absolutely nothing in the Complaint to suggest any reason to pierce the corporate veil here. The Complaint does not allege that the plaintiffs had a contract, or any employment or other legal relationship, with Mrs. Arsenault individually. The plaintiffs do not allege that they were ever employed by Mrs. Arsenault personally, nor does the Complaint allege that the plaintiffs had any expectation of receiving compensation or other consideration from Mrs. Arsenault individually. Under these circumstances, there is no basis for imposing liability upon Mrs. Arsenault individually. Id. See also, Union Mutual Life Insurance Co. v. Chrysler Corp., 793 F.2d 1, 11 (1st Cir. 1986). Accordingly, the Complaint should be dismissed as to defendant Janet Arsenault individually.

## III. CONCLUSION

For the foregoing reasons, all counts of the plaintiffs' Complaint should be dismissed pursuant to Fed. R. Civ. P. 12(b)(6).

                                    Respectfully submitted,

                                    J'S FOUR, INC. and JANET ARSENAULT
By their attorney,

_____
Robert Wolkon, BBO No. 550406
**WOLKON & PASCUCCI, LLP**
One Beacon Street, Suite 1320
Boston, MA 02108
(617) 523-8400

Dated: July 18, 2005

## CERTIFICATE OF SERVICE

I, Robert Wolkon, hereby certify that I have caused a copy of the foregoing document to be served upon Scott A. Lathrop, Esq., Scott A. Lathrop & Associates, 122 Old Ayer Road, Groton, MA 01450 via telefax and first-class mail this 18th day of July, 2005.

_____
Robert Wolkon

12