UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C. A. No.  05-11265 MLW

*********************************************
DIANE MURACH and MELISSA AUBUCHON,  *
   Plaintiffs  *
              *
              *
  v.  *
              *
J'S FOUR, INC. and JANET ARSENAULT,  *
   Defendants  *
*********************************************

**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs Diane Murach and Melissa Aubuchon hereby oppose the Rule 12(b)(6) Motion to Dismiss filed by defendants J's Four, Inc., and Janet Arsenault.

I. **Plaintiffs' Allegations**

As required under Rule 12(b)(6) of the Federal Rules of Civil Procedure the following allegations in the Complaint must be deemed to be true for the purpose of Defendants' Motion to Dismiss:

Plaintiffs Diane Murach and Melissa Aubuchon were both employed by defendant J's Four, Inc. (Complaint, ¶ 4-5)

Defendant J's Four, Inc., is in the business of operating approximately fifteen Kentucky Fried Chicken stores in Massachusetts, New Hampshire and New York. (Complaint, ¶ 6)

Defendant Janet Arsenault is the Treasurer, Secretary and one of the two Directors of J's Four. (Complaint, ¶ 7)

1

On or about October 20, 2004, (a day or two before a U.S. Department of Labor audit was to take place), Arsenault asked Murach why the payroll records had not been altered (to hide child labor law violations.) Murach told Arsenault that the payroll records were not changed because it was against the law for her to change payroll records. Arsenault then said that if Murach and Aubuchon would not change the payroll records in the future, she would find someone else who would. (Complaint, ¶ 30)

On January 2, 2005, Janet Arsenault and J's Four abruptly terminated the employment of Murach and Aubuchon because Murach and Aubuchon would not (illegally) alter the payroll records. (Complaint, ¶ 31-32)

Based on the foregoing, the plaintiffs have brought an action for illegal retaliation under the Fair Labor Standards Act, 29 U.S.C. §215, (Count I) and for breach of the implied covenant of good faith and fair dealing (Count II).

II.     **Plaintiffs Have Stated a Claim Under the Fair Labor Standards Act**

In Count I the plaintiffs have bought a claim for retaliation under the Fair Labor Standards Act (29 U.S.C. § 215). The anti-retaliation provision of the Fair Labor Standards Act provides in relevant part:

> "It shall be unlawful for any person – to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

Because the FLSA is a remedial statute, it "must not be interpreted or applied in a narrow grudging manner." Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1994). Following this mandate, the First Circuit has held in Valerio

v. Putnam Associates Incorporated, 173 F.3d 35 (1st Cir. 1999), that this FLSA anti-retaliation provision protects an employee who has lodged an internal complaint with his or her employer even if he has not filed a judicial or administrative complaint, noting that the Supreme Court has stated that the FLSA "must not be interpreted in a narrow, grudging manner." Id. at 43.

The First Circuit recently expanded on this concept in the case of Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99 (1st Cir. 2004). There the Court stated the following regarding "protected activity:"

> " '[I]t is the assertion of statutory rights . . . by taking some action adverse to the company . . . that is the hallmark of protected activity under § 215(a)(3).' McKenzie v. Renberg's Inc., 94 F.3d 1478, 1486 (10th Cir. 1996); see also EEOC v. HBE Corp., 135 F.3d 543, 554 (8th Cir. 1998) (requiring action adverse to the company in a Title VII retaliation case). To engage in protected activity, 'the employee must step outside his or her role of representing the company and . . . file . . . an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA.' McKenzie, 94 F.3d at 1486. 'A requirement of 'stepping outside' a normal role is satisfied by a showing that the employee took some action against a . . . policy . . . and that the action was based on a reasonable belief that the employer engaged in . . . conduct' contrary to the FLSA. HBE Corp., 135 F.3d at 554." Id. at 102.

Thus under this First Circuit precedent the plaintiffs need to show that they took some action against a policy and that their action was based on a reasonable belief that the defendants were engaged in conduct contrary to the FLSA.

In this regard it should be noted that in Claudio-Gotay the First Circuit specifically observed with approval that in HBE Corp., the Eighth Circuit held that a personnel director engaged in a protected activity and stepped outside his employment role when he refused to fire a black employee because the firing was ordered for patently discriminatory reasons. Id. at 102.

3

In the instant case the FLSA rights and obligations in issue are the record keeping requirements. Under the Fair Labor Standards Act, (29 U.S.C. § 211(c)), employers must "make, keep, and <u>preserve</u> such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment". [emphasis added] That section of the statute reads as follows:

> "(c) Records. Every employer subject to any provision of this Act or of any order issued under this Act shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this Act or the regulations or orders thereunder."

In the instant case the plaintiffs have alleged that they advised the defendants that the falsification of employees' time records was illegal and they would not do it. They further allege that they were then terminated for refusing to do this.

In their Memorandum of Law (p. 4) the defendants argue that facts of this case are exactly the same as the facts of <u>Claudio-Gotay v. Becton Dickinson Caribe, Ltd.</u> were the First Circuit held that the plaintiff Claudio did not step outside his role of "merely performing his job" and therefore had not engaged in protected activity when he informed his employer of potential overtime violations. In so arguing defendants state:

> "The [First Circuit in <u>Claudio-Gotay</u>] concluded that when the plaintiff first informed the defendant of the potential overtime violations, he did so in furtherance of his job responsibilities, and thus he 'never crossed the line from being an employee merely performing his job . . . to an employee lodging a personal complaint.' <u>Id.</u>, 375 F.3d at 102-103.
> In this case, we have exactly the same situation." (Memorandum of Law, p. 4)

As alleged, however, the facts of the instant case are not the same as those in <u>Claudio-Gotay v. Becton Dickinson Caribe, Ltd.</u> In that case the employer Becton contracted with a subcontractor to provide security guard services at its plant. It was

4

plaintiff Claudio's job to make sure that the security guard service was adequately rendered and to approve the subcontractor's invoices for payment. Claudio examined the subcontractor's invoices and concluded that the subcontractor was not compensating its guards for overtime. Claudio reported this to his superiors at Becton. In response, Becton's lawyers concluded that the security guards were not Becton's employees and therefore Becton was not responsible for ensuring that the security guards received overtime pay. Nevertheless Becton also decided to inform the subcontractor of the potential overtime violations. Claudio in the meanwhile was told to approve the invoices.

Claudio claimed that there were two incidents that constituted protected activity. The first activity was when Claudio informed Becton that the guards were not being paid overtime. The second incident occurred when Claudio refused to sign the invoices even after being told that Becton was not the employer of the guards and after Becton informed the subcontractor of the potential overtime violations.

These facts in Claudio-Gotay are quite distinguishable from the facts in the instant case. In the instant case it was not the job responsibility of either Murach or Aubuchon to falsify employees' time records as defendant Arsenault demanded. Rather it was plaintiffs' job responsibility under the law to "make, keep, and preserve" the employees' time records. As the First Circuit noted with approval in Claudio-Gotay, a personnel director "stepped outside his employment role" and engaged in a protected activity when he refused to fire a black employee because the firing was ordered for patently discriminatory reasons. Id. at 102. Similarly here when the plaintiffs lawfully refused to falsify time records, they stepped outside their employment role and engaged in protected activity.

5

The defendants also argue in their Memorandum (p. 5) that the instant case is similar to the second incident in Claudio-Gotay that Claudio claimed constituted protected activity. As stated, the second incident occurred when Claudio refused to sign the invoices even after being told that Becton was not the employer of the guards and after Becton informed the subcontractor of the potential overtime violations. In finding that Claudio's refusal to sign the invoices in the circumstances of that case did not constitute protected activity, the First Circuit stated:

> "The FLSA anti-retaliation provision protects an employee's lawful efforts to secure rights afforded by the FLSA. The FLSA does not, however, provide a 'shield against legitimate employer actions.' Blackie, 75 F.3d at 724. Claudio's refusal to sign the invoices occurred after the whistle had been blown and after corrective actions were being taken to remedy any FLSA violations." Id. at 103. [emphasis added]

This second incident in Claudio-Gotay is nothing like the allegations of this case. When Arsenault demanded that the plaintiffs falsify the employees' time records, the defendants were not engaging in "legitimate employer actions." The defendants were engaging in illegal actions. Furthermore, unlike the second incident in Claudio-Gotay, the defendants had not taken any corrective action to remedy any FLSA actions. In fact, the defendants were trying to hide their child labor law violations.

The defendants rely on two other, non-First Circuit cases in support of their position. (Memorandum, p. 7) In Robinson v. Wal-Mart Stores, Inc., 341 F. Supp. 2d 759 (W. D. Mi. 2004), the plaintiff Leona Robinson, a Personnel Training Coordinator, became aware that hours worked were occasionally under-reported by management and/or employees. Plaintiff expressed concerns about these practices to her management. Later she was first demoted, then discharged. The Court dismissed the plaintiff's FLSA retaliation claim because: "She appears to have been appropriately cautioning her

6

superiors about improprieties with an eye toward correcting them and minimizing the risk of liability." Id. at 763.   Thus, Ms. Robinson, unlike the plaintiffs in the instant case, was never ordered to take an illegal action and was not terminated for refusing to take illegal actions.

The other case that defendants rely on is McKenzie v. Renberg's, Inc., 94 F.3d 1478 (10th Cir. 1996).  In that case the plaintiff McKenzie, in her capacity as personnel director, undertook in August, 1991, to advise her employer that its wage and hour policies were in violation of the FLSA.  On September 16, 1991, she was terminated. First the Court noted that: "we have held that § 215(a)(3) also protects employees who articulate a good faith, though unproven, belief that the employer is violating their rights under the FLSA." Id. at 1486.   However, the Court went on to say:

> "Here, McKenzie never crossed the line from being an employee merely performing her job as personnel director to an employee lodging a personal complaint about the wage and hour practices of her employer and asserting a right adverse to the company. McKenzie did not initiate a FLSA claim against the company on her own behalf or on behalf of anyone else.  Rather, in her capacity as personnel manager, she informed the company that it was at risk of claims that might be instituted by others as a result of its alleged FLSA violations.  In order to engage in protected activity under § 215(a)(3), the employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." Id. at 1486-1487.

In the instant case the plaintiffs did assert a right adverse to the company and the defendants; they would not falsify the company's time cards in advance of an audit by the U.S. Department of Labor.  And these are rights (and obligations) protected by the FLSA. As stated, under § 211(c), employers must  "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment". [emphasis added]

7

As the First Circuit stated in Claudio-Gotay , "it is the assertion of statutory rights . . . by taking some action adverse to the company . . . that is the hallmark of protected activity under § 215(a)(3)." supra at 102.  In the instant case, the defendants wanted their employees' time records illegally altered.  The plaintiffs took an adverse position; they would not do it.  And they were fired for that.

Lastly, the defendants argue that plaintiffs have not made any "factual allegations", that they have only proffered "vague conjecture." (Memorandum, p. 8) However, the plaintiffs' allegations are quite specific and factual.   As stated in the Complaint, on or about October 20, 2004, (a day or two before a  U.S. Department of Labor audit was to take place), Arsenault  asked Murach why the payroll records had not been altered (to hide child labor law violations.)  Murach told Arsenault that the payroll records were not changed because it was against the law for her to change payroll records.  Arsenault then said that if Murach and Aubuchon would not change the payroll records in the future, she would find someone else who would. (Complaint, ¶ 30) Then on January 2, 2005, Janet Arsenault and J's Four abruptly terminated the employment of Murach and Aubuchon because Murach and Aubuchon would not (illegally) alter the payroll records. (Complaint, ¶ 31-32) These are quite specific allegations of illegal retaliation under the Fair Labor Standards Act.

Therefore Count I should not be dismissed.

III.   **Plaintiffs Have Stated a Cause of Action for Breach of the Implied Covenant of Good Faith and Fair Dealing**

In Count II the plaintiffs brought an action for breach of the implied covenant of good faith and fair dealing.    Under Massachusetts law it is a breach of the implied

covenant of good faith and fair dealing if an employee is terminated for asserting an legally guaranteed right, for doing what the law requires, or for refusing to do what the law forbids. Folmsbee v. Tech Tool, Grinding & Supply, Inc., 417 Mass. 388, 394 (1994); Smith-Pfeiffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 149-150 (1989).  See also Clark v. Middlesex Opportunity Council, Inc., 11 Mass. L. Rptr. No. 23, 542 (July 10, 2000) [It is a breach of contract in violation of public policy to fire someone because he refused to provide false information to state and federal agencies.]

Under M.G.L.c. 151, § 15, (as well as under 29 U.S.C. § 211) employers must keep true and accurate records of employees' hours:

> "Every employer shall keep a true and accurate record of the name, address and occupation of each employee, of the amount paid each pay period to each employee, of the hours worked each day and each week by each employee, and such other information as the commissioner or the attorney general in their discretion shall deem material and necessary."

When the defendants terminated the plaintiffs' employment for their refusal to alter the employee records, the defendants terminated the plaintiffs for refusing to do what both state and federal law forbids.  That is a classic breach of the implied covenant of good faith and fair dealing.

In their Memorandum (p. 10) the defendants argue that "the plaintiffs' common law implied covenant/wrongful discharge claim in Count II is premised entirely on a retaliatory firing, a policy which is expressly covered by the FLSA and encompassed within Count I of the Complaint.   Accordingly, the plaintiffs' common law claim cannot stand, and Count II should be dismissed."

Defendants should make up their minds. Indeed, a retaliatory firing is covered by the FLSA; therefore Count I should not be dismissed (contrary to what the defendants otherwise have tried to argue.) However, Count II should not be dismissed either because a state law – M.G.L.c. 151, § 15 – similarly requires employers to keep accurate records of their employees' hours. When the defendants terminated the plaintiffs' employment for their refusal to violate that statute, the defendants breached the implied covenant of good faith and fair dealing.

Therefore Count II should not be dismissed.

IV.  **Arsenault Is Individually Liable**

Defendant Janet Arsenault is the Treasurer, Secretary and one of the two Directors of J's Four. She is also the person who directed the plaintiffs to falsify employee time records and the person who terminated the plaintiffs' employment.

In their Memorandum (p. 10) the defendants argue that there is no basis for personal liability and that the Complaint in its entirety should be dismissed against defendant Arsenault.

While the point is well taken with regard to Count II, it is not with regard to Count I. Under the Fair Labor Standards Act, individuals as well as companies can be liable. In the case of Baystate Alternative Staffing, Inc. v. Herman, 163 F. 3d 668, 675 (1st Cir. 1998), the First Circuit held that under the Fair Labor Standards Act individuals who are personally responsible for making decision about the conduct of the business that contributed to the violation of the Act can be personally liable. Arsenault is the person

who in fact terminated the plaintiffs' employment for refusing to violate the Fair Labor Standards Act. Therefore she is personally liable.

Arsenault therefore should not be dismissed from Count I.

V. **Conclusion**

Based upon all of the foregoing, the defendants' Motion to Dismiss should be denied (except as it pertains to Arsenault and Count II).

>                Diane Murach
>                Melissa Aubuchon
>                By their attorney
>
>                *Scott A. Lathrop*
>
>                Scott A. Lathrop & Associates
>                122 Old Ayer Road
>                Groton, MA 01450
>                (978) 448-8234
>                BBO No. 287820

Dated: July 26, 2005

11

<u>Certificate of Service</u>

I, Scott A. Lathrop, hereby certify that I have served the foregoing Opposition on the defendants by mailing this day a copy to the last known address of their Attorney of Record.

*Scott A. Lathrop*

Dated: July 26, 2005