UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 05-CV-11265-MLW

DIANE MURACH,

Plaintiff

v.

J'S FOUR, INC., and JANET ARSENAULT,

Defendants

**REPORT AND RECOMMENDATION ON**

**DEFENDANTS' MOTION TO DISMISS
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)
(Docket # 3)**

and

**FURTHER ORDER ON**

**DEFENDANTS' MOTION TO STAY DISCOVERY
PENDING RULING ON MOTION TO DISMISS
(Docket # 9)**

ALEXANDER, M.J.

The plaintiff, Diane Murach, brings this action pursuant to the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, et seq., against her former employer, J's

Four, Inc., and one of J's Four's directors, Janet Arsenault.[1]  In addition to alleging a violation of the FLSA, Ms. Murach also alleges a state law claim of breach of the implied covenant of good faith and fair dealing.  The defendants have filed a motion to dismiss the complaint that was referred to this Court for a Report and Recommendation.  After a February 2, 2006, hearing, careful consideration of the parties' oral and written asseverations, and for the reasons set forth more fully below, this Court now recommends that the District Court ALLOW the defendants' motion to dismiss.

**RELEVANT BACKGROUND**

As with any motion to dismiss, this Court must accept as true all well-pleaded facts and extend Ms. Murach the benefit of all reasonable inferences.  Raytheon Co. v. Cont'l Cas. Co., 123 F. Supp. 2d 22, 24 (D. Mass. 2000).  With this standard in mind, the facts underlying this case, as taken from Ms. Murach's complaint, are as follows.

J's Four is a Fitchburg, Massachusetts, corporation that operates approximately fifteen Kentucky Fried Chicken ("KFC") stores in Massachusetts, New Hampshire, and New York.  Plaintiff's Complaint ("Cmpl.") ¶ 6.  Ms.

---

[1]The complaint was initially filed by Ms. Murach and a co-employee, Melissa Aubuchon.  Ms. Aubuchon has since dismissed her claims against the defendants and is no longer a party to the suit.

Arsenault is the treasurer, secretary and one of two directors of J's Four.  Id. ¶ 7.  Ms. Arsenault's husband, John Arsenault, is also a director, and the president, of the corporation.  Id.  He has not been named as a defendant.  The Arsenaults own Jarsen Management of New England, LLC, which owns the KFC stores in Massachusetts and New Hampshire, and Jarsen Management of Albany, LLC, which owns the KFC stores in New York.  Id. ¶¶ 8, 9.

Ms. Murach began to work for the defendants in August 1998, out of the Arsenault's home, as an office manager for Jarsen Management of Albany.  Id. ¶¶ 10, 12.  In 2001, Ms. Murach became the office manager of Jarsen Management of New England and Ms. Arsenault's daughter took over the position of office manager for Jarsen Management of Albany.  Id. ¶ 14.  As part of her job, Ms. Murach conducted internal audits of the KFC stores for any child labor law violations and created a company document called the "FYI Sheet" on which she recorded the data from the internal audits.  Id. ¶ 16.  Ms. Murach would then submit the FYI sheet to Ms. Arsenault and also mail it to the stores with their payroll.  Id.

In May 2000, the state of Massachusetts audited Jarsen Management of New England and J's Four's Gardner, Massachusetts, KFC store to inspect the defendants' compliance with labor laws, including child labor laws.  Id. ¶ 17.

Immediately prior to the audit, according to Ms. Murach, Ms. Arsenault altered the birth date of one minor employee to conceal a child labor law violation. Id. As a result, the state did not find any child labor law violations. Id.

Then, in August 2003, the United States Department of Labor ("DOL") audited Jarsen Management of New England and J's Four's Derry, New Hampshire, KFC store for compliance with labor laws, again including child labor laws. Id. ¶ 18. Preceding the audit, the defendants searched through their payroll records and found numerous child labor violations. Id. ¶ 19. To hide the violations, the defendants allegedly altered time records by falsely recording the hours of the days that underage employees worked. Id. Ironically, the DOL still found multiple child labor violations. Id. ¶ 20. Similar events transpired in October 2003 when the DOL audited the Salem, New Hampshire, KFC store. Id. ¶ 21. Several times after this audit, which also revealed child labor law violations, Ms. Arsenault asked Ms. Murach if she had altered the time records to disguise any such violations. Id. ¶¶ 21, 22. Ms. Murach contends that each time she was asked this question she avoided responding. Id. ¶ 22. She did not alter the time records. Id.

In late August 2004, Ms. Murach, at the defendants' request, sold her Westminister, Massachusetts, home and bought a new home, also in Westminister,

that contained an office so that she could work out of her home.  Id. ¶¶ 23, 24.  She also oversaw Jarsen Management of New England and once again became the office manager of Jarsen Management of Albany.  Id. ¶ 25.  Melissa Aubuchon was hired as the office manager of Jarsen Management of New England and also began to work out of Ms. Murach's home, on October 4, 2004.  Id. ¶¶ 25, 26.

In mid-October 2004, the DOL notified Ms. Murach that it would conduct another audit of the Derry, New Hampshire, KFC store.  Id. ¶ 28.  In preparation for the audit, Ms. Murach gave Ms. Arsenault copies of the relevant FYI sheets.  Id. ¶ 29.  On October 20, 2004, a day or two before the audit, Ms. Arsenault asked Ms. Murach why the payroll records had not been altered to hide the child labor law violations.  Id. ¶ 30.  Ms. Murach responded that the payroll records had not been changed because to do so would be against the law.  Id.  Ms. Arsenault told Ms. Murach that if she would not change the payroll records in the future, Ms. Arsenault would find someone who would.  Id.  A little over two months later, on January 2, 2005, the defendants terminated Ms. Murach's employment.  Id. ¶ 31.

Ms. Murach then commenced the extant suit, asserting that she was terminated because she would not change the payroll records.  The defendants, in response, have moved to dismiss Ms. Murach's complaint on the basis that 1) the

5

complaint does not allege the basic elements necessary to make out a *prima facie case* of retaliation under the FLSA; 2) the state common law claim fails to state a claim under Massachusetts law and is superceded by the statutory remedies of the FLSA; and 3) the complaint does not allege any facts that support the claims against Ms. Arsenault in her individual, rather than her professional, capacity.

**ANALYSIS**

The purpose of a motion to dismiss is to determine whether a complaint, in accordance with Fed. R. Civ. P. 8(a)(2), contains "a short and plain statement of the claim showing that the pleader is entitled to relief." E.g., Raytheon Co., 123 F. Supp. 2d at 26.  Pursuant to this standard, a plaintiff need not "'set out in detail the facts upon which he bases his claims.'" Id. at 27 (quoting Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit, 507 U.S. 163, 168 (1993)).

It is well established that "'a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" Castegneto v. Corp. Express, Inc., 13 F. Supp. 2d 114, 116 (D. Mass. 1998) (quoting Conley v. Gibson, 355 U.S. 41, 45-46 (1957)).  "'[T]he issue is not whether the plaintiff will ultimately prevail, but whether that party is entitled to offer evidence to support its claims.'" Raytheon, 123 F. Supp. 2d at 27 (quoting Day v. Fallon Cmty. Health

Plan, Inc., 917 F. Supp. 72, 75 (D. Mass. 1996)). Therefore, the District Court may only dismiss a plaintiff's claims if, extending every reasonable inference in the plaintiff's favor, it finds that the plaintiff's claims are legally insufficient to state a claim. Coyne v. City of Somerville, 972 F.2d 440, 442-43 (1st Cir. 1992). With this standard in mind, the Court turns to the Ms. Murach's claims and the defendants' asseverations in favor of dismissal.

**Fair Labor Standards Act**

In count I of her complaint, Ms. Murach alleges that the defendants violated the FLSA by firing her in retaliation for her refusal to alter the payroll records to hide child labor law violations. The defendants aver that Ms. Murach has failed to allege facts that, even if true, make out a *prima facie* case under the FLSA.

The FLSA prohibits employers from penalizing employees who seek to "enforce rights guaranteed by the federal law." Blackie v. State of Maine, 75 F. 3d 716, 722 (1st Cir. 1996). The statute states, in pertinent part, that

> it shall be unlawful for any person –
> to discharge or in any other manner discriminate against
> any employee because such employee has filed any
> complaint or instituted or caused to be instituted any
> proceeding under or related to this chapter . . . .

29 U.S.C. § 215(a)(3). To prove a claim of retaliation under the FLSA, a plaintiff must show, at a minimum, that "(1) the plaintiff engaged in statutorily protected

7

activity, and (2) his employer thereafter subjected him to an adverse employment action (3) as a reprisal for having engaged in the protected activity." Blackie, 75 F. 3d at 722.

The central issue at this stage of the proceedings seems to be whether Ms. Murach engaged in protected activity that would trigger protection under the FLSA.  More specifically, does Ms. Murach's refusal to alter the payroll records constitute the filing of a complaint such that, if the defendants did indeed fire her in response to that refusal, she has a valid claim pursuant to the FLSA?  Both parties focus their attentions on the First Circuit case Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99 (1st Cir. 2004).  The defendants aver that Claudio-Gotay dictates that Ms. Murach's FLSA claim must be dismissed.  Ms. Murach, in response, makes a concerted effort to distinguish her circumstances from those of the Claudio-Gotay plaintiff.

In that case, the First Circuit examined whether the employee plaintiff's oral and written communications to the defendant employer, and then outright refusal to sign certain invoices, constituted filing a complaint within the ambit of the FLSA.  Id. at 101.  The plaintiff's job responsibilities included approving and signing invoices for the payment of security guards sub-contracted from another company.  Id.  He noticed that the contracting company was not properly

compensating the guards for overtime and notified the defendant of this potential labor violation both orally and in writing.  Id.  The defendant ultimately determined that because the guards were not its employees, it was not responsible for ensuring that they received overtime.  Id.  The defendant did, however, decide to inform the contractor of the potential FLSA violation and told the plaintiff that, in the meantime, he should sign the invoices.  Id.  The plaintiff refused and was thereafter terminated.  Id.

     The Court held that neither of the plaintiff's actions – neither his informing his employer, both orally and in writing, that the guards were not being paid overtime nor his refusing to sign the invoices – involved the plaintiff engaging in protected activity for purposes of the FLSA.  Id. at 103.  The notification that the guards were not being paid overtime did not involve the plaintiff "stepping outside" of his normal role by taking action based on a reasonable belief that his employer was engaged in conduct contrary to the FLSA.  Id. at 102 (quoting EEOC v. HBE Corp., 135 F. 3d 543, 544 (8th Cir. 1998).  The plaintiff's job involved monitoring the security guards and when he informed his employer of the potential overtime violations, he did so "in furtherance of his job responsibilities."  Id. at 103.

Additionally, the Court held that the plaintiff's refusal to sign the invoices did not amount to the filing of a complaint that would trigger the protection of § 215(a)(3). Although the First Circuit does "not requir[e] an employee to file a formal complaint with a court or agency to receive FLSA protection, [it] does require an employee to take action beyond mere 'abstract grumblings.'" Id. (quoting Valerio v. Putnam Assoc. Inc., 173 F.3d 35, 44 (1st Cir. 1999)). Additionally, "[t]he FLSA does not . . . provide a 'shield against legitimate employer actions.'" Id. (quoting Blackie, 75 F.3d at 724). The employer in Claudio-Gotay had taken corrective action to remedy the potential FLSA problems and the plaintiff's refusal to sign the invoices therefore did not amount to the filing of a complaint.

In the extant case, the defendants asseverate that Ms. Murach's refusal to alter the payment records similarly fails to constitute the filing of a complaint. Although Ms. Murach might have stepped outside of her employee role when she refused to alter the payroll records, that alone does not amount to the filing of a complaint. The facts alleged in the complaint, even if true, indicate that Ms. Murach did nothing more than refuse to alter the records. While the basis for her refusal may have been a sound one – doing so would have been against the law – and she need not have filed a "formal" complaint, one oral statement to her

employer that she would not alter the records does not sufficiently establish activity protected by the FLSA. It amounts only to "abstract grumblings." The Court therefore RECOMMENDS that the District Court ALLOW the defendants' motion to dismiss count I of Ms. Murach's complaint.

**Implied Covenant of Good Faith and Fair Dealing**

In the second count of her complaint, Ms. Murach alleges that the defendants have violated the implied covenant of good faith and fair dealing. The defendants do not dispute that Massachusetts law recognizes such a claim, but assert, *inter alia*, that if the FLSA claim is to be dismissed, the federal court should not retain jurisdiction over the state law claim. The Court agrees. See, e.g., Ruiz-Sulsona v. University of Puerto Rico, 334 F. 3d 157, 160-61 (1st Cir. 2003). "As a general rule, where the district court dismisses the federal claims before trial, the court should dismiss the state law claims without prejudice." Id. at 161 (citing Rodriguez v. Doral Mortgage Corp., 57 F.3d 1168, 1177(1st Cir. 1995). This Court therefore RECOMMEND that the District Court ALLOW the defendants' motion to dismiss count II of Ms. Murach's complaint.[2]

---

[2]This case was not removed from the state court; thus, while this Court may not remand, Ms. Murach may choose to file in state court.

**Claims Against Janet Arsenault Individually**

In addition to moving to dismiss the complaint in its entirety, the defendants have also provided an additional basis in support of their motion to dismiss the claims against Ms. Arsenault individually.  They aver, in short, that there is no basis for the personal liability of Ms. Arsenault.  Ms. Murach has conceded that no basis for personal liability exists on the state common law claim and the Court therefore need address the asseveration only as to the FLSA claim.  Since this Court has recommended dismissing the FLSA claim, the Court need wade no further into the employment waters.[3]

**MOTION TO STAY DISCOVERY**

Finally, the Court turns to the defendants' motion to stay discovery pending resolution of that motion.  At the February 2 hearing, this Court ruled from the bench that discovery would be stayed pending this Court's Report and Recommendation on the motion to dismiss.  Given the recommendation that the complaint be dismissed, the Court now continues the stay, pending the District Court's final resolution of the motion to dismiss.

---

[3] It should be noted, however, that even if the FLSA claim prevailed, this Court, pursuant to Donvan v. Agnew, 712 F. 2d 1509 (1st Cir. 1983), would dismiss the individual corporate officer claim against Ms. Arsenault.

12

**CONCLUSION**

For the foregoing reasons, this Court RECOMMENDS that the District Court ALLOW the defendants' motion to dismiss the complaint. Additionally, the Court ORDERS that the stay of discovery be continued pending final resolution of the motion to dismiss.

SO ORDERED.

2/17/06                                          /s/ Joyce London Alexander
Date                                             United States Magistrate Judge

## NOTICE TO THE PARTIES

The parties are hereby advised that under the provisions of Rule 3(b) of the Rules for United States Magistrate Judges in the United States District Court the District Court of Massachusetts, any party who objects to this proposed Report and Recommendation must file a written objection thereto with the Clerk of this Court within ten (10) days of the party's receipt of the Report and Recommendation.  The written objections must specifically identify the proportions of the proposed findings, recommendations or report to which objection is made and the basis for such objection.  The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review.  See Keating v. Sec'y of Health & Human Servs., 848 F.2d 271, 273 (1st Cir. 1988); United States v. Valencia-Copete, 792 F.2d 4, 6 (1st Cir. 1986); Scott v. Schweiker, 702 F.2d 13, 14 (1st Cir. 1983); United States v. Vega, 687 F.2d 376, 378-79 (1st Cir. 1982); Park Motor Mart, Inc. v. Ford Motor Co., 616 F.2d 603, 604 (1st Cir. 1980); see also Thomas v. Arn, 474 U.S. 140, 155 (1985), reh'g denied, 474 U.S. 1111 (1986).