UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

C. A. No.  05-11265 MLW

*******************************************
DIANE MURACH,                              *
      Plaintiff                          *
                                            *
                                            *
   v.                                      *
                                            *
J'S FOUR, INC. and JANET ARSENAULT,        *
      Defendants                         *
*******************************************

**PLAINTIFF'S OBJECTION TO PROPOSED**
**REPORT AND RECOMMENDATION**

Pursuant to Rule 3(b) of the Rules for Magistrate Judges, plaintiff Diane Murach hereby objects to the proposed Report and Recommendation issued in this case on February 17, 2006.

**I.**    **Plaintiff's Objections**

Plaintiff Diane Murach hereby objects to the following specific findings and recommendations:

    A.    The finding that Murach's refusal to engage in an illegal activity did not establish activity protected by the Fair Labor Standards Act and amounted only to "abstract grumblings." Aligned with this is the objection to the resulting recommendation that Count I of the Complaint be dismissed. (Report and Recommendation, p. 11) As argued below, the refusal to engage in an illegal act does not constitute mere "abstract grumblings." In Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99,102 (1st Cir. 2004), the First Circuit specifically cited with approval that

1

        the case of <u>EEOC v. HBE Corp.</u>, 135 F.3d 543, 554 (8th Cir. 1998), where the Eighth Circuit held that a personnel director engaged in a protected activity he refused to fire a black employee because the firing was ordered for patently discriminatory reasons. His refusal to engage in illegal activity was not "abstract grumblings." The same holding applies in this case. More detailed grounds for this objection are below.

B.    The recommendation that Court II be dismissed on the basis that Count II is a state law claim over which the Court should not retain jurisdiction if Count I is dismissed. (Report and Recommendation, p. 11) To the extent Murach objects to the dismissal of Count I, she argues that the Court should therefore also retain jurisdiction over Count II.

## II.    Summary of Plaintiff's Allegations

As required under Rule 12(b)(6) of the Federal Rules of Civil Procedure the following allegations in the Complaint must be deemed to be true for the purpose of Defendants' Motion to Dismiss:

Plaintiff Diane Murach was employed by defendant J's Four, Inc. (Complaint, ¶ 4)

Defendant J's Four, Inc., is in the business of operating approximately fifteen Kentucky Fried Chicken stores in Massachusetts, New Hampshire and New York. (Complaint, ¶ 6)

Defendant Janet Arsenault is the Treasurer, Secretary and one of the two Directors of J's Four. (Complaint, ¶ 7)

On or about October 20, 2004, (a day or two before a U.S. Department of Labor audit

was to take place), Arsenault asked Murach why the payroll records had not been altered (to hide child labor law violations.) Murach told Arsenault that the payroll records were not changed because it was against the law for her to change payroll records. Arsenault then said that if Murach would not change the payroll records in the future, she would find someone else who would. (Complaint, ¶ 30)

On January 2, 2005, Janet Arsenault and J's Four abruptly terminated the employment of Murach because Murach would not (illegally) alter the payroll records. (Complaint, ¶¶ 31-32)

Based on the foregoing, the plaintiff brought an action for illegal retaliation under the Fair Labor Standards Act, 29 U.S.C. §215, (Count I) and for breach of the implied covenant of good faith and fair dealing (Count II).

### III.     Plaintiff Has Stated a Claim Under the Fair Labor Standards Act

In Count I Murach has bought a claim for retaliation under the Fair Labor Standards Act (29 U.S.C. § 215). The anti-retaliation provision of the Fair Labor Standards Act provides in relevant part:

> "It shall be unlawful for any person – to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter, or has testified or is about to testify in any such proceeding, or has served or is about to serve on an industry committee."

Because the FLSA is a remedial statute, it "must not be interpreted or applied in a narrow grudging manner." Tennessee Coal, Iron & R.R. Co. v. Muscoda Local No. 123, 321 U.S. 590, 597 (1994). Following this mandate, the First Circuit has held in Valerio v. Putnam Associates Incorporated, 173 F.3d 35 (1st Cir. 1999), that this FLSA anti-retaliation provision protects an

employee who has lodged an internal complaint with his or her employer even if he has not filed a judicial or administrative complaint, noting that the Supreme Court has stated that the FLSA "must not be interpreted in a narrow, grudging manner." Id. at 43.

The First Circuit recently expanded on this concept in the case of Claudio-Gotay v. Becton Dickinson Caribe, Ltd., 375 F.3d 99 (1st Cir. 2004). There the Court stated the following regarding "protected activity:"

> " '[I]t is the assertion of statutory rights . . . by taking some action adverse to the company . . . that is the hallmark of protected activity under § 215(a)(3).' McKenzie v. Renberg's Inc., 94 F.3d 1478, 1486 (10th Cir. 1996); see also EEOC v. HBE Corp., 135 F.3d 543, 554 (8th Cir. 1998) (requiring action adverse to the company in a Title VII retaliation case). To engage in protected activity, 'the employee must step outside his or her role of representing the company and . . . file . . . an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA.' McKenzie, 94 F.3d at 1486. 'A requirement of 'stepping outside' a normal role is satisfied by a showing that the employee took some action against a . . . policy . . . and that the action was based on a reasonable belief that the employer engaged in . . . conduct' contrary to the FLSA. HBE Corp., 135 F.3d at 554." Id. at 102.

Thus under this First Circuit precedent in order to establish that she engaged in protected activity, Murach need only show that she took some action against a Company policy and that her action was based on a reasonable belief that the defendants were engaged in conduct contrary to the FLSA.

In this regard it should be noted that in Claudio-Gotay the First Circuit specifically observed with approval that in HBE Corp., the Eighth Circuit held that a personnel director engaged in a protected activity and stepped outside his employment role when he refused to fire a black employee because the firing was ordered for patently discriminatory reasons. Id. at 102.

In the instant case the FLSA rights and obligations in issue are the record keeping requirements. Under the Fair Labor Standards Act, (29 U.S.C. § 211(c)), employers must

"make, keep, and <u>preserve</u> such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment". [emphasis added]  That section of the statute reads as follows:

> "(c) Records. Every employer subject to any provision of this Act or of any order issued under this Act shall make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment maintained by him, and shall preserve such records for such periods of time, and shall make such reports therefrom to the Administrator as he shall prescribe by regulation or order as necessary or appropriate for the enforcement of the provisions of this Act or the regulations or orders thereunder."

In the instant case Murach has alleged that she advised the defendants that the falsification of employees' time records was illegal and for that reason would not do it.  She further alleged that she was then terminated for refusing to do this.

In their Memorandum of Law (p. 4) the defendants had argued to the Magistrate Judge that facts of this case are exactly the same as the facts of <u>Claudio-Gotay v. Becton Dickinson Caribe, Ltd.</u> were the First Circuit held that the plaintiff Claudio did not step outside his role of "merely performing his job" and therefore had not engaged in protected activity when he informed his employer of potential overtime violations.  In so arguing defendants stated:

> "The [First Circuit in <u>Claudio-Gotay</u>] concluded that when the plaintiff first informed the defendant of the potential overtime violations, he did so in furtherance of his job responsibilities, and thus he 'never crossed the line from being an employee merely performing his job . . . to an employee lodging a personal complaint.' <u>Id.</u>, 375 F.3d at 102-103.
> 	In this case, we have exactly the same situation." (Memorandum of Law, p. 4)

As alleged, however, the facts of the instant case are not the same as those in <u>Claudio-Gotay v. Becton Dickinson Caribe, Ltd.</u>  In that case the employer Becton contracted with a subcontractor to provide security guard services at its plant.  It was plaintiff Claudio's job to

make sure that the security guard service was adequately rendered and to approve the subcontractor's invoices for payment.  Claudio examined the subcontractor's invoices and concluded that the subcontractor was not compensating its guards for overtime.  Claudio reported this to his superiors at Becton.  In response, Becton's lawyers concluded that the security guards were not Becton's employees and therefore Becton was not responsible for ensuring that the security guards received overtime pay.  Nevertheless Becton also decided to inform the subcontractor of the potential overtime violations.  Claudio in the meanwhile was told to approve the invoices.

Claudio claimed that there were two incidents that constituted protected activity.  The first activity was when Claudio informed Becton that the guards were not being paid overtime.  The second incident occurred when Claudio refused to sign the invoices even after being told that Becton was not the employer of the guards and after Becton informed the subcontractor of the potential overtime violations.

These facts in Claudio-Gotay are quite distinguishable from the facts in the instant case.  In the instant case it was not the job responsibility of Murach to falsify employees' time records as defendant Arsenault demanded.  Rather it was plaintiff's job responsibility under the law to "make, keep, and preserve" the employees' time records.  As the First Circuit noted with approval in Claudio-Gotay, a personnel director "stepped outside his employment role" and engaged in a protected activity when he refused to fire a black employee because the firing was ordered for patently discriminatory reasons.  Id. at 102.  Similarly here when the plaintiff lawfully refused to falsify time records, she stepped outside her employment role and engaged in protected activity.

6

The defendants also argued in their Memorandum (p. 5) that the instant case is similar to the second incident in Claudio-Gotay that Claudio claimed constituted protected activity. As stated, the second incident occurred when Claudio refused to sign the invoices even after being told that Becton was not the employer of the guards and after Becton informed the subcontractor of the potential overtime violations. In finding that Claudio's refusal to sign the invoices in the circumstances of that case did not constitute protected activity, the First Circuit stated:

> "The FLSA anti-retaliation provision protects an employee's lawful efforts to secure rights afforded by the FLSA. The FLSA does not, however, provide a 'shield against legitimate employer actions.' Blackie, 75 F.3d at 724. Claudio's refusal to sign the invoices occurred after the whistle had been blown and after corrective actions were being taken to remedy any FLSA violations." Id. at 103. [emphasis added]

This second incident in Claudio-Gotay is nothing like the allegations of this case. When Arsenault demanded that the plaintiffs falsify the employees' time records, the defendants were not engaging in "legitimate employer actions;" the defendants were engaging in illegal actions. Furthermore, unlike the second incident in Claudio-Gotay, the defendants had not taken any corrective action to remedy any FLSA actions. In fact, the defendants were trying to illegally hide their child labor law violations.

The defendants relied on two other, non-First Circuit cases in support of their position. (Memorandum, p. 7) In Robinson v. Wal-Mart Stores, Inc., 341 F. Supp. 2d 759 (W. D. Mi. 2004), the plaintiff Leona Robinson, a Personnel Training Coordinator, became aware that hours worked were occasionally under-reported by management and/or employees. Plaintiff expressed concerns about these practices to her management. Later she was first demoted, then discharged. The Court dismissed the plaintiff's FLSA retaliation claim because: "She appears to have been appropriately cautioning her superiors about improprieties with an eye toward correcting them

7

and minimizing the risk of liability." Id. at 763.   Thus, Ms. Robinson, unlike the plaintiffs in the instant case, was never ordered to take an illegal action and was not terminated for refusing to take illegal actions.

The other case that defendants relied on is McKenzie v. Renberg's, Inc., 94 F.3d 1478 (10th Cir. 1996).  In that case the plaintiff McKenzie, in her capacity as personnel director, undertook in August, 1991, to advise her employer that its wage and hour policies were in violation of the FLSA.  On September 16, 1991, she was terminated.   First the Court noted that: "we have held that § 215(a)(3) also protects employees who articulate a good faith, though unproven, belief that the employer is violating their rights under the FLSA." Id. at 1486. However, the Court went on to say:

> "Here, McKenzie never crossed the line from being an employee merely performing her job as personnel director to an employee lodging a personal complaint about the wage and hour practices of her employer and asserting a right adverse to the company. McKenzie did not initiate a FLSA claim against the company on her own behalf or on behalf of anyone else.  Rather, in her capacity as personnel manager, she informed the company that it was at risk of claims that might be instituted by others as a result of its alleged FLSA violations.  In order to engage in protected activity under § 215(a)(3), the employee must step outside his or her role of representing the company and either file (or threaten to file) an action adverse to the employer, actively assist other employees in asserting FLSA rights, or otherwise engage in activities that reasonably could be perceived as directed towards the assertion of rights protected by the FLSA." Id. at 1486-1487.

In the instant case the plaintiff did assert a right adverse to the Company and the defendants; she would not falsify the Company's time cards in advance of an audit by the U.S. Department of Labor.  And these are rights (and obligations) protected by the FLSA.  As stated, under § 211(c), employers must  "make, keep, and preserve such records of the persons employed by him and of the wages, hours, and other conditions and practices of employment". [emphasis added]

As the First Circuit stated in Claudio-Gotay , "it is the assertion of statutory rights . . . by taking some action adverse to the company . . . that is the hallmark of protected activity under § 215(a)(3)." supra at 102. In the instant case, the defendants wanted their employees' time records illegally altered. The plaintiff took an adverse position; she would not do it. And she was fired for that.

Lastly, none of the cases cited by the plaintiff, the defendant or the Magistrate Judge characterize a refusal to engaged in illegal activity as "abstract grumblings." The plaintiff is uncertain as to from where this characterization or conclusion comes. Furthermore, inasmuch as this Recommendation comes in the context of a Rule 12(b)(6) motion, the following allegations must be taken as true:

- A. On or about October 20, 2004, (a day or two before a U.S. Department of Labor audit was to take place), Arsenault asked Murach why the payroll records had not been altered (to hide child labor law violations.)

- B. Murach told Arsenault that the payroll records were not changed because it was against the law for her to change payroll records.

- C. Arsenault then said that if Murach would not change the payroll records in the future, she would find someone else who would. (Complaint, ¶ 30)

- D. On January 2, 2005, Janet Arsenault and J's Four abruptly terminated Murach's employment because she would not would not (illegally) alter the payroll records. (Complaint, ¶¶ 31-32)

This request to illegally alter payroll records, this refusal to do so because it was "against

the law" and the threat that if Murach did not alter the payroll records, she would lose her employment – are not mere "abstract grumblings."

      Therefore Count I should not be dismissed.

### IV.  Conclusion

      Based upon all of the foregoing, Counts I and II should not be dismissed.

                        Diane Murach
                        By her attorney

                        /s/ Scott A. Lathrop
                        _____
                        Scott A. Lathrop, Esq.
                        Scott A. Lathrop & Associates
                        122 Old Ayer Road
                        Groton, MA 01450
                        (978) 448-8234
                        BBO No. 287820

Dated:  February 26, 2006

### Certificate of Service

I, Scott A. Lathrop, hereby certify that I have served the foregoing Objection on the defendants by mailing this day a copy to the last known address of their Attorney of Record.

                        /s/ Scott A. Lathrop
                        _____
                        Scott A. Lathrop

Dated:  February 26, 2006